IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID WOOD,                                         )
                                                    )
              Plaintiff,                         )
                                                    )
                                                    )
v.                                                  )       Case No. 14-2228-CM
                                                    )
                                                    )
LP CONVERSIONS, INC., *et al.*,                     )
                                                    )
             Defendants.                        )
                                                    )
_____)

**MEMORANDUM AND ORDER**

This case is before the court on defendant Tech-Services, Inc.'s Motion to Dismiss First Amended Complaint Against Tech-Services, Inc. On All Counts (Doc. 12). Plaintiff David Wood filed his original action in Johnson County District Court, but the case was removed to this court. The named defendants are LP Conversions, Inc. ("LP"), a Florida corporation, Tech-Services, Inc. ("Tech-Services"), a Florida corporation, Joseph Deven Hurst, and Roger Simons. Defendant Hurst is a Florida resident and an officer, director, and shareholder of LP and Tech-Services; defendant Simons is a North Carolina resident and an officer, director and shareholder of LP, and purportedly an officer of Tech-Services. Plaintiff brings eight counts against defendants: (1) violation of the Kansas Securities Act, (2) fraudulent misrepresentation and inducement, (3) fraud by silence, (4) negligent misrepresentation, (5) breach of fiduciary duty, (6) breach of contract, (7) conversion, and (8) accounting. Tech-Services argues that it should be dismissed from this case, arguing that plaintiff's complaint does not meet the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007).  Specifically, Tech-Services claims plaintiff fails to allege any facts that Tech-Services engaged in any wrong doing that would entitle plaintiff to relief.

**I.  Case Summary**

Defendants Hurst and Simons are the majority owners, officers, and/or directors of defendants Tech-Services and LP.  Both corporations manufacture and sell propane kits for outdoor power equipment.  Plaintiff alleges that defendants induced him, through false representations and omissions of material fact, to purchase one million dollars worth of LP shares.  In exchange, defendants agreed that plaintiff would participate as an officer, director, and employee of LP.  Plaintiff alleges that defendants misrepresented their businesses and plaintiff's participation in the business after his investment.  Plaintiff contends that defendants have not honored their agreements regarding the business, and have not honored their agreement to return his investment.  Plaintiff argues he is entitled to the return of his million-dollar investment and to additional damages arising from defendants' actions.

**II.  Legal Standard—Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).  The Supreme Court set forth the new standard for pleadings in *Twombly*, stating that pleadings should include "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "The pleading should include 'more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.'"  *Ellis v. Isoray Med., Inc.*, No. 08-2101-CM, 2008 WL 3915097, at *1 (D. Kan. Aug. 22, 2008) (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008)).  The court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff."  *Burnett v. Mtg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  And the court must

"resolve all reasonable inferences in the plaintiff's favor." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998)).

## III. Analysis

### A. *Summary of the Facts*

Plaintiff's alleged facts, which the court must view in the light most favorable to plaintiff, are as follows. Defendants Hurst and Simons were officers of Tech-Services. In July 2013, they formed LP and purportedly agreed that Tech-Services would assign portions of its business to LP.[1] Acting with the actual or apparent authority of both companies, Hurst and Simons began business discussions with plaintiff Wood. In September 2013, defendant Hurst provided plaintiff with LP's formation documents, including the first board meeting's notes. Plaintiff alleges these notes represented that Tech-Services's agreements, customers, and customer relationships would be transferred to LP. Defendants Hurst and Simons apparently represented to plaintiff that he would become a director, officer, and salaried employee of LP in exchange for his purchase of LP stock.

Plaintiff relied on this representation and purchased 20,000 shares of LP stock for one million dollars.[2] Plaintiff became an officer of LP, and he also became an officer of Tech-Services, gaining the title of "Vice President-Strategic Accounts." From October 2013 to March 2014, plaintiff worked on behalf of both LP and Tech-Services, purportedly working with Hurst and Simons on the companies' plans and activities. After this purchase, plaintiff learned that Tech-Services had not assigned its customer business to LP, as represented by the meeting minutes provided by Hurst to plaintiff. Because of this, plaintiff alleges Tech-Services and Hurst knowingly and improperly retained revenue from these agreements that rightfully belonged to LP, in which plaintiff had an ownership

---

[1] Defendant maintains that the two companies are completely separate.
[2] Despite plaintiff's purchase, Hurst and Simons remained the majority owners of LP.

interest. Additionally, plaintiff also alleges that his one-million-dollar payment to LP for its stock was wrongfully used for Tech-Services's business purposes. In March 2014, plaintiff asked defendants to formalize and affirm in writing plaintiff's ownership interest in LP and his status as an officer with LP and Tech-Services. Defendants refused to do so. As a result, plaintiff has no stock certificates or other evidence of his ownership interest in LP and is no longer an employee of either LP or Tech-Services. But, as alleged by plaintiff, Tech-Services retained plaintiff's one million dollars.

In response to Tech-Services's allegations that it and plaintiff have no connection, plaintiff points to two important exhibits that were attached to his Amended Complaint. First, he has provided what appears to be the minutes from a July 15, 2013 meeting of LP's board of directors. (Doc. 8-1.) Second, he has provided the following scanned copy of what appears to be both sides of his business card.




(Doc 8-2.) Notably, Tech-Services never disputes that the business card is authentic.

### B. *Application of the Facts to Plaintiff's Causes of Action*

Plaintiff's Amended Complaint complies with the *Twombly* standard, as enough facts make plaintiff's claims for relief against Tech-Services plausible. As an initial matter, Tech-Services argues that plaintiff never connects the facts with each cause of action. This argument is without merit. In his Amended Complaint, plaintiff includes a section containing his factual allegations. While it is true that

plaintiff did not explicitly connect the relevant facts with each count, each count begins with a numbered paragraph that incorporates the entire factual section.  This sufficiently connects the facts to each count; thus, plaintiff's claims are more than a "formulaic recitation of the elements of a cause of action."  *Ellis*, 2008 WL 3915097, at *1.

### 1.  Count One:  Violation of the Kansas Securities Act

Tech-Services argues that plaintiff cannot bring a claim for securities fraud against Tech-Services because (1) plaintiff did not purchase any ownership interest in Tech-Services, and (2) Tech-Services did not and could not sell any ownership interest in LP.  Plaintiff argues that Tech-Services shares liability for the false statements of its officers and agents—defendants Hurst and Simons—pursuant to the Kansas Securities Act, which provides joint and several liability for "a person that directly or indirectly controls a person liable under subsections (b) through (f)."  K.S.A. § 17-12a509(g).  Plaintiff argues that this "control person" liability extends to other companies whose agents participate in the alleged misconduct.  The court agrees.

Tech-Services correctly points out the standard for control person liability claims on a motion to dismiss.  "[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) "control" over the primary violator by the alleged controlling person . . . ."  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1107 (10th Cir. 2003).  "To make this showing [under the second element], the plaintiffs must point to facts which indicate that the defendants had 'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  *Id*. at 1108 (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).  In its reply, Tech-Services never argues that plaintiff has failed to establish a primary violation of the securities laws.  The court will therefore only analyze *Adams*'s second prong.

Tech-Services's argument is flawed because plaintiff does point to facts that indicate Tech-Services had "possession, direct or indirect, of the power to direct or cause the direction of management and policies of a person, *whether through the ownership of voting securities, by contract, or otherwise*." *Id*. (emphasis added) (internal quotations omitted). Tech-Services concedes that defendants Hurst and Simons are officers of Tech-Services and LP and that defendant Hurst is also a director and shareholder of Tech-Services. This is further confirmed by the notes of LP's first board of directors' meeting that plaintiff provided as an exhibit (Doc. 8-1). As officers, Hurst and Simons had the power to direct the management and policies Tech-Services.[3] Because Tech-Services concedes Hurst and Simons are agents of Tech-Services, the reverse is true: Tech-Services has the power to direct Hurst and Simons. With that backdrop, plaintiff alleges that, while representing their authority on behalf of Tech-Services (and LP), defendants Hurst and Simons made false statements specifically concerning plaintiff's participation in and duties with Tech-Services (and LP). Thus, any false statements made by either of them could plausibly be also attributable to both corporations.

Tech-Services argues it could not sell or purport to sell LP stock. This is immaterial in these circumstances because plaintiff alleges defendant-agents Hurst and Simons used their apparent authority on behalf of Tech-Services to induce (or attempt to induce) plaintiff into investing in another company—a company for which Hurst and Simons are also officers or agents. Put another way, the focus is on the inducement, not the eventual sale. At the very least, Tech-Services, via its agents, lent its name in an effort induce plaintiff to invest in LP. Finally, plaintiff alleges that his one-million-dollar purchase of LP shares directly benefitted Tech-Services. On these facts, and at this stage in the proceedings, the court finds that plaintiff has satisfied the pleading standard under *Twombly*.

---

[3] The remaining circumstantial evidence perhaps falls within *Maher*'s "otherwise" category, but the court does not make any findings on this point.

### 2. Counts Two, Three and Four:  Fraudulent Misrepresentation and Inducement, Fraud by Silence, and Negligent Misrepresentation

Tech-Services contends that plaintiff (1) failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure and (2) has not established any duty owed to him by Tech-Services for his fraud claims.

Tech-Services argues that plaintiff's Amended Complaint does not comply with Rule 9(b), which heightens the pleading standard for claims of fraud.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Tech-Services contends plaintiff failed to state with particularity:  the circumstances underlying his claims of fraud and his claims of an agency relationship between Tech-Services and defendants Hurst and Simons.[4]  The court disagrees.

To plead fraud with particularity, plaintiff's Amended Complaint must contain "factual allegations regarding the who, what, when, where and how of the alleged claims."  *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).  When allegations of fraud implicate an agency relationship, courts have elevated the pleading standard for agency to that of Rule 9(b).  *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."); *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916 (8th Cir. 2001) (affirming that "a plaintiff seeking to hold a principal liable for an agent's fraud must plead not only fraud but also agency with particularity").

---

[4] Tech-Services's counsel, who also represents the other defendants in this matter, concedes that plaintiff satisfies Rule 9(b) with respect to the remaining defendants.  (Of course, those defendants deny the substantive allegations.)

Plaintiff alleges sufficient particularity against Tech-Services.  The Amended Complaint alleges:

- Who: defendants Hurst and Simons, acting on behalf of both defendant corporations (Doc. 8 at 2, ¶¶ 4, 5, 10, 19.);
- What: fraudulent misrepresentations or fraud by silence and inducement regarding the transfer of business from Tech-Services to LP and plaintiff's role in the businesses (Doc. 8 at 5, ¶¶ 13, 20.);
- When: August 2013 through March 2014, specific dates include August 28, 2013, September 16, 2013, and September 22, 2013;
- Where: although it is unclear precisely where the parties' business discussions took place, the court can reasonably infer the discussions took place at either party's place of business; and
- How: defendants Hurst and Simon, acting as agents of Tech-Services, verbally made these misrepresentations or remained silent with they had a duty to speak.

As briefly discussed with respect to Count One and discussed below, plaintiff also pleads with particularity an agency relationship between Tech-Services and defendants Hurst and Simons.

Having determined plaintiff's Amended Complaint complies with Rule 9(b), the court will now review whether plaintiff has established that Tech-Services owes him a duty.

Tech-Services argues that plaintiff has not established that it owed him any duty.  For his claims of fraudulent misrepresentation, fraud by silence, and negligent misrepresentation, plaintiff must prove there was a duty owed to him.  *See Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004) (citing *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001)) (an element of fraud by silence, for example, is a defendant's duty to communicate material facts to the plaintiff); *Shirley v. Glass*, 308 P.3d 1, 6 (Kan. 2013) ("A plaintiff in

a negligence action must prove four elements: a duty owed to the plaintiff, breach of that duty, causation between the breach of duty and the injury to the plaintiff, and damages suffered by the plaintiff."). Under Kansas law, the duty to disclose material facts arises in two situations: (1) when a contracting party has superior knowledge, or knowledge that is not within the reasonable reach of the other party; and (2) when a fiduciary relationship exists. *Id*.

Plaintiff argues Tech-Services owed him a duty under the first situation.[5] Tech-Services contends it is not a party to plaintiff's stock purchase agreement and thus cannot be a contracting party. Because defendants Hurst and Simons represented themselves as agents of Tech-Services while discussing plaintiff's investment in LP, however, plaintiff asserts Tech-Services is liable under "vicarious liability."[6] In its reply, Tech-Services argues that Hurst and Simons could not be acting as its employees because the scope of their employment could not include the sale of LP stock nor details regarding LP's operations. Yet, the court believes it is plausible that the scope of Hurst and Simons employment could include making representations about transferring Tech-Services's business to LP, which, plaintiff alleges, ultimately benefitted Tech-Services.

What is clear to the court is that defendants Hurst and Simons were involved in the operations of both defendant corporations and were are capable of wearing three different hats—their own hat (representing themselves as an individual), an LP agent/officer hat, and a Tech-Services agent/officer hat—at any or all times. But what is unclear is precisely which hat Hurst and Simons wore while engaging plaintiff in business discussions. Because the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff," the court will accept, as true, plaintiff's allegation that defendants Hurst and Simons represented

---

[5] Plaintiff also alleges a fiduciary duty, but that is addressed later in this opinion, under a different count.
[6] Plaintiff is not required to specifically invoke the terms "vicarious liability" or "respondeat superior." *See Estate of Belden v. Brown County,* 261 P.3d 943, 975 (2011) ("Federal courts have consistently recognized allegations of that sort in a complaint—identifying alleged acts of negligence or other wrongful conduct on the part of employees performing their jobs—give fair notice to the employer that it may be subject to vicarious liability.")

themselves as agents or officers of Tech-Services while discussing plaintiff's investment. *See Burnett*, 706 F.3d at 1235. It is therefore possible that Tech-Services could be vicariously liable for the actions of Hurst and Simons. Indeed, because plaintiff was subsequently employed by Tech-Services as direct result of plaintiff's stock purchase, the court can reasonably infer that Hurst and Simons were wearing their Tech-Services hat while negotiating plaintiff's investment in LP and that those negotiations fell within their scope of employment. Accordingly, the court finds that plaintiff has complied with the pleading standards under Rule 9(b) and *Twombly*.

### 3. Count Five: Breach of Fiduciary Duty

Tech-Services argues plaintiff failed to plead any facts establishing a fiduciary duty between it and plaintiff. Plaintiff's response is short and weak, claiming that he was "a partner in Tech-Services with Hurst and Simons. (Doc. 13 at 7.) Plaintiff's only support for his status as a "partner" in Tech-Services is an article in an electronic trade publication that explains plaintiff's work on propane-powered motors, which goes on to say that plaintiff is a stakeholder in Tech-Services and "is partners with Hurst and Simons." Other than this loose reference to his status as "partner," plaintiff fails to allege any facts indicating that a "partnership" existed. (Doc. 8-3.) Consequently, the court finds that this "partnership" claim is not plausible on its face. The court is not persuaded this sufficiently proves plaintiff has the legal status of a partner in Tech-Services. Plaintiff's claim that Tech-Services owed him a fiduciary duty fails as a matter of law.

### 4. Count Six: Breach of Contract

Tech-Services contends it was not a party to the discussions at issue; and, in fact, it could not be a party to those discussions because it does not own any interest in LP. Plaintiff emphasizes the inconsistency in Tech-Services's assertion that it "was never a party to the discussions at issue," when its officers, Hurst and Simons, participated in all relevant discussions, and Hurst even provided

plaintiff with LP's board meeting minutes detailing (presumably confidential) corporate agreements between LP and Tech-Services. After doing all this, the parties entered into a stock purchase agreement, and shortly thereafter, plaintiff became employed by Tech-Services.

An implied-in-fact contract "arises from the facts and circumstances showing mutual intent to contract." *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2009 WL 3561301, at *14 (D. Kan. Oct. 30, 2009) (quoting *Smith v. Amoco Prod. Co.*, 31 P.3d 255, 265 (Kan. 2001)). Here, plaintiff fails to plead sufficient facts or make any arguments that an implied—in law or in-fact—contract with Tech-Services exists. Even if plaintiff could establish that Tech-Services's involvement in his investment transaction created an implied contract between himself and Tech-Services, the breach of that implied contract has not been properly pleaded. Plaintiff states "Mr. Wood relied upon Tech-Services' express agreement that it was contributing valuable and essential customers, relationships, and agreements to LP Conversions." This support's plaintiff's claim of misrepresentation, not breach of contract. The "agreement" to which plaintiff is referring is between Tech-Services and LP—not between Tech-Services and plaintiff. Accordingly, the court dismisses plaintiff's breach of contract claim against Tech-Services.

### 5. Counts Seven and Eight: Conversion and Accounting

Plaintiff specifically alleges that there was an unlawful comingling of funds between LP and Tech-Services. Those comingled funds allegedly consisted of plaintiff's one-million-dollar payment for 20,000 shares of LP stock. While more specific information would be helpful in identifying the precise impact of this comingling-of-funds transaction, plaintiff's specifically alleges the money left his pocket, traveled to LP's pocket, but ultimately ended in Tech-Services' pocket—a pocket Tech-Services strenuously alleges has no connection to plaintiff in spite of the facts discussed in this opinion. For the same reasons the court finds that plaintiff's claim that Tech-Services may be liable

under respondeat superior under Counts Two through Four, the court finds that it is equally plausible that Tech-Services has committed conversion of plaintiff's one million dollars through the actions of its agents, defendants Hurst and Simons. As such, it follows that plaintiff's claim that Tech-Services should account for its monies is plausible on its face.

## IV. Conclusion

For all of these reasons, the court finds that plaintiff's Counts One, Two, Three, Four, Seven, and Eight against Tech-Services are "plausible on [their] face." *Twombly*, 550 U.S. at 570. Counts Five and Six are not and are, therefore, dismissed.

**IT IS SO ORDERED** that defendant Tech-Services, Inc.'s Motion to Dismiss First Amended Complaint Against Tech-Services, Inc. On All Counts (Doc. 12) is denied with respect to Counts One, Two, Three, Four, Seven, and Eight.

**IT IS FURTHER ORDERED** that defendant Tech-Services, Inc.'s Motion to Dismiss First Amended Complaint Against Tech-Services, Inc. On All Counts (Doc. 12) is granted with respect to Counts Five and Six.

Dated this 24th day of October, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**